**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JEAN JOSEPH GUILLORY** | **CIVIL ACTION** |
| **VERSUS** | **NO:    22-4135** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **SECTION: "T" (4)** |

## REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of Social Security, pursuant to Title 42 United States Code § 405(g). The Commissioner denied Plaintiff, Jean Joseph Guillory ("Guillory") eligibility for Disability Insurance Benefits ("DIB") under the Title II of the Social Security Act, 42 U.S.C. § 423.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

**I.    Background**

Guillory is a thirty-two-year-old, with sixteen (16) years of education, with a GED, who has past relevant work as a custodian and helper at an electric company.   R. Doc. 13, Tr. 424.

Guillory filed for DIB under Title II of the Social Security Act, on March 28, 2019. *Id*. at Tr. 218, 220. Guillory alleges that he became disabled as a result of psychosis, bipolar disorder, depression and social anxiety.   *Id*. at Tr. 223.   His claim was initially denied on January 26, 2021. *Id*. at Tr. 89. The claim was denied upon reconsideration on July 15, 2021.   *Id*. at Tr. 98.   A hearing was held on March 9, 2022, before Administrative Law Judge Thomas Henderson (ALJ).   *Id*. at Tr. 31-42.   The ALJ issued an unfavorable decision dated March 23, 2022.   *Id*. at Tr. 8-25.

The ALJ found that Guillory met the insured status requirements of the Social Security Act

through December 31, 2022.   R. Doc. 13, Tr. 13.   He further found that Guillory had not engaged in substantial gainful activity since October 9, 2019, the alleged onset date.   *Id*.   The ALJ found that Guillory suffers from the severe impairments of bipolar disorder, personality disorder, and ADHD by history.   *Id*.

 In his decision, the ALJ found Guillory met the insured status requirements of the Social Security Act through December 31, 2022.   *Id.*   Plaintiff has not engaged in substantial gainful activity since October 9, 2019, the alleged onset date.   *Id.*   Plaintiff suffers from the severe impairments of bipolar disorder, personality disorder, and ADHD by history.   *Id.*

The ALJ found that Guillory does not have an impairment or combination of impairments that meets or medically equals the severity criteria of a listed impairment.   *Id.* at 14 (Finding 4).   He found that Guillory had a moderate limitation in the areas of interacting with others, concentrating, persisting or maintaining pace and adapting or managing oneself, with only mild limitation in the area of understanding, remembering or applying information.   *Id.*

Guillory alleges that he was involved in a car accident and has not engaged in any substantial gainful activity or employment since November 21, 2018.   *Id.*   On May 15, 2019, after being denied DIB by the state agency, Guillory timely filed a Request for Reconsideration on December 5, 2019, which was denied.   *Id.* Tr. 242-244.

Thereafter Guillory filed a request for hearing by an ALJ on December 17, 2019, and October 21, 2020.   *Id.* Tr. 292-294.   A hearing occurred on March 9, 2021, and July 12, 2021.   *Id.*   The ALJ denied Guillory's claim on July 22, 2021, finding that he was not disabled under the meaning of the Social Security Act, from November 21, 2018, through the date of his decision.   *Id*.

The ALJ found that Guillory has the residual functional capacity to perform a full range work at all exertional levels subject to the following limitations:

He can understand, remember, and carry out simple, routine, and repetitive tasks (consistent with unskilled, SVP 1-2 work) on a regular and continuing basis, 8 hours per day and 40 hours per week. He can interact with coworkers and supervisors on an occasional basis in a work environment with no public contact and only routine and predictable workplace changes.     Finding 5, T 15.

The ALJ found that Guillory is unable to perform his past relevant work as an emergency room technician, nurse anesthetist, or construction helper based on the vocational expert's testimony. Finding 6, Tr. 23.   The ALJ determined that Guillory is a 33-year-old individual with at least a high school education and a master's degree in Nursing.   Findings 6-8, Tr. 23-24.   The ALJ further found that transferability of job skills was not material to determining disability because the Medical-Vocational Rules support a finding that he is "not disabled."   Finding 9, Tr. 24.

Therefore, the ALJ found that given Guillory's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant capable of performing.   Finding 10, Tr. 24.   The ALJ, relying on the testimony of a vocational expert, found that factoring Guillory's nonexertional limitations, he could work in light and unskilled jobs such as an office helper, router, and merchandise marker.   *Id.* at 24.   Finally, the ALJ found that Guillory had not been under a period of disability from October 9, 2019, through March 23, 2022, the date of the decision.   Finding 11, Tr. 25.

The Appeals Council denied Guillory's request for review on April 22, 2022, making the ALJ's determination the final decision of the Commissioner.   T 1-5.   Guillory initiated this action challenging that decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) on October 25, 2022. R. Doc. 1.

## II.     <u>Standard of Review</u>

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence.   *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).   The Court may not re-weigh the evidence, try issues *de novo*, or

substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d, 552, 555 (5th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir. 1983)).

## III.    Analysis

### A.    Evaluation of Nurse Sandra Gonzalez Medical Opinion

Guillory contends that the ALJ's residual functional capacity finding is not supported by substantial evidence because he failed to properly evaluate the opinion of Sandra Gonzalez. Guillory contends that this constitutes error.

The Commissioner contends that the ALJ applied the correct legal standards and substantial evidence supported his residual functional capacity determination. R. Doc. 17. The Commissioner contends that the ALJ properly applied the revised regulations for evaluating medical opinion evidence

consisting of the medical sources who treated and examined Guillory. Rec. 17, Tr. 5. The Commissioner contends the ALJ's evaluation of the medical opinions comports with the relevant guidelines because the ALJ articulated how persuasive he found the opinions and specifically articulated how he came to the finding.

Pursuant to the revised rules for evaluating medical opinions, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to consider all medical opinions and prior administrative medical findings using specific factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes considering the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) the physician's specialization; and (5) other factors. 20 C.F.R. § 404.1520c(b) The most important factors are consistency and supportability. *Id.*; *Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018). Under the revised guidelines, the ALJ must articulate how persuasive he finds each of the opinions in the record based on the supportability and consistency factors. 20 C.F.R. § 404.1520c(b).

The supportability factor evaluates how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1). In other words, "supportability looks internally to the bases presented by the medical opinion itself. *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022). "In articulating how they considered the supportability factor, ALJs may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, did not examine the claimant, or did not provide a detailed explanation for [their] opinion." *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (citations

omitted) (collecting sources).

The ALJ noted that the medical evidence reflects a history of amphetamine-induced psychosis and mood disorders before the adjudication period.  He described in great detail the longitudinal treatment of Dr. Gonzalez and further considered her opinion.  According to the ALJ, applying the supportability requirement, the ALJ found Dr. Gonzalez's opinions were not supported by a sufficient description of actual clinical finding.  He found that her conclusions were not found to be consistent with the actual progress reports which reflect good responses to medication with largely unremarkable and stable mental status examinations.  A review of the medical records and the ALJ's opinion supports the conclusion that her form findings were not consistent with her treatment notes.

For example, the ALJ detailed in great deal Guillory's treatment history with Nurse Practitioner Gonzalez, Guillory's periods of not taking and then resuming medication.  R. Doc. 13.  The ALJ further noted how medication provided relief to Guillory according to Dr. Gonzalez's treatment notes. The ALJ noted that the progress notes specifically reflect good sleep/sleeping well and occasional but manageable thoughts of paranoia.  The ALJ further noted that the treatment records do not reflect abnormal psychomotor activity.

The ALJ further pointed out that the treatment records reflect some conflict between the claimant and his parents which seems to have only briefly interfered with treatment.  According to the ALJ, the evidence indicates that the symptoms endorsed on the forms are either not reflected in the progress notes or have been described as improved with medical treatment.  *Sumrall v. Kijakazi*, 2023 WL 4498520 (June 9, 2023) (Impairments controlled with medication not severe); *Pepper v. Berryhill*, 2018, 2018WL 547576 (W.D. Kent. Jan. 24, 2018) (where condition is controlled with medication it is not severe).  Thus, the ALJ considered the doctor's treating relationship with Guillory.  20 C.F.R. § 404.1520c(c)(3).  Contrary to Guillory's argument that the ALJ confused treatment with cure, the opinion does not reflect that he is cured but that his mental impairments were not severely limiting.

6

Next Guillory contends that the ALJ failed to consider the consistency factor.    Consistency is defined as the extent to which a medical source's opinion is supported by relevant objective medical evidence.    *Revisions to Rules*, 82 Fed. Reg. at 5853.    It is an external check that references evidence from other medical and nonmedical sources.    *Id.* § 404.1520c(c)(2).    So consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals.    *Sharon H. v. Kijakazi,* 2022 WL 3951488 (N.D. Texas, Aug. 31, 2022).

Regarding the consistency requirement, the ALJ considered the consultative psychological examination of Dr. Manucia and Dr. Dupont's opinion that predated the disability onset date.    The ALJ explained that while Dr. Manucia's assessment lacks specifically defined functional limitations, it was found generally persuasive as supported by the detailed clinical observations and consistent with the other evidence in the overall finding of no marked or extreme limitations in any area of medical functioning.

As to Dr. Dupont, the ALJ noted that in a letter Dr. Dupont concluded that Guillory had severe bipolar depression, was "very limited" with regard to social and behavioral limitations and unable to engage in any substantial gainful activity because of the impairments had lasted or were expected to last at least 60 months.    R. Doc. 13, T.21-22.    The ALJ found that this opinion was not persuasive in relation to the issue of disability date because it was rendered before the onset date of the alleged disability.    *Id.* at 22.

The ALJ considered Dr. Paul Cherry's finding that Guillory had the mental residual functional capacity to understand, remember and carry out simple and repetitive tasks and found it to be partially persuasive.    *Id.* at 21, 56.    The ALJ found that the listing assessments were persuasive as supported by a narrative of the evidence and *consistent* with the other evidence in the finding of no marked or extreme limitation under the listing criteria.    *Id.* at 21.    He did note, however, additional moderate impairment in the area of adapting or managing oneself is supported by the overall evidence.    The

7

ALJ also explained that while the state agency psychological assessments from the initial and reconsideration levels were similar, greater deference was given to the reconsideration level opinion because it included consideration of the additional evidence. *Id.* at 22.

At the reconsideration level, the mental residual functional capacity was found largely persuasive and *consistent* with the other evidence, including the evidence received at the hearing level. While referencing a series of records, the ALJ noted that the treatment evidence reflects good response to medical treatment with some symptom complaints that have not been described as marked or acute, and largely unremarkable and stable findings during clinical examinations. The Court finds that the ALJ properly considered the consistency factor and had substantial evidence to discredit Dr. Gonzalez's opinion based on contrary evidence in the record.

### B.    ALJ's consideration of Guillory's Obesity in RFC assessment

Guillory contends that the ALJ's RFC is not supported by substantial evidence because he failed to consider Guillory's obesity in determining the RFC. R. Doc. 15. Guillory contends that while the ALJ recognized his weight in the decision, he found no medically determinable physical impairment. *Id.* Guillory further contends that because he is obese, the ALJ should have so considered this condition in combination with his/her other impairments. *Id.*

In opposition, the Commissioner contends that it was Guillory who failed to submit evidence that his weight was a severe impairment or that his weight affected his ability to work at all exertional levels as assessed by the ALJ. R. Doc. 17. The Commissioner further contends that although Guillory's weight was above normal, he failed to show that his weight interfered with his ability to perform basic work activities. *Id.*

The ALJ, according to the record, found that the evidence does not establish any medically determinable physical impairment. He stated that while the Guillory's mental health records incidentally reflect obesity, including a BMI of 34 noted on November 18, 2021 (R. Doc. 13, Tr. 14),

he held that there is no evidence of symptom complaints, clinical signs or functional limitations related to obesity or any other physical condition.    *Id.*

The ALJ further noted that a consultative physical examination conducted at the request of the Administration in June 2021 indicated normal clinical findings with no evidence of limitation in the claimant's physical functional abilities.    *Id.*    The ALJ further noted that a non-examining state agency medical consultant opined in July 2021 that the evidence showed no medically determinable physical impairment.    *Id.*    He further pointed out that during the hearing, Guillory did not allege any physical symptoms or limitation impeding his ability to work.    *Id.*    Based on the evidence, the ALJ found that these opinions were persuasive, well-supported and consistent with the other evidence and concluded that Guillory did not have a medically determinable physical impairment.

The Social Security rulings recognize that obesity, though not a listed impairment, can reduce an individual's occupational base for work activity in combination with other ailments.    *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(Q) (2008); SSR 02–1p, 2000 WL 628049, at 5-7 (SSA Sept. 12, 2002).    "When [the SSA] identif[ies] obesity as a medically determinable impairment . . . [it] will consider any functional limitations resulting from the obesity in the [Residual Functional Capacity] assessment, in addition to any limitations resulting from any other physical or mental impairments that [it] identif[ies]."    *Id.*    But the "fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have an  . . . impairment."    *Id.*    A claimant's obesity must be considered at all steps of the sequential evaluation process.    SSR 02–1p at *3.    The ALJ must perform an "individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."    *Id.* at 4.

The ALJ properly considered Guillory's obesity as detailed above.    He concluded that there are no functional limitations.    He also considered the consultative doctors' evaluations and the records are devoid of any indication that Guillory's obesity impacted his mental limitations.

Further, Guillory points to nothing in the record demonstrating that his obesity caused limitations in excess of those provided in the RFC. Therefore, he "has not met his burden of proof with respect to obesity-related limitations, nor established that any purported error in evaluating obesity harmed him in any way." *Hill v. Berryhill*, No. 1:17-CV-02090 (SDA), 2018 WL 4462362, at *13 (S.D.N.Y. Sept. 18, 2018); *Crossley v. Astrue*, No. 3:07–CV–0834–M, 2008 WL 5136961, at *5 (N.D.Tex. Dec.5, 2008) ("Obesity is not a per se disabling impairment and Plaintiff has offered no medical evidence that her obesity actually results in these limitations . . . ."). The Court therefore finds no error or basis for remand in the ALJ's consideration of Guillory's obesity.

## IV.    Recommendation

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge be **AFFIRMED** as it is based on substantial evidence, pursuant to Title 42 U.S.C. § 405(g); and that the plaintiff, Jean Josephy Guillory's claims for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

New Orleans, Louisiana, this 31st day of August 2023.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.